KEVIN PLUDEMAN et al., Appellants-Respondents, v NORTHERN LEASING SYSTEMS, INC., et al., Respondents-Appellants. [904 NYS2d 372]—

Order, Supreme Court, New York County (Martin Shulman, J.), entered June 30, 2009, which, insofar as appealed from as limited by the briefs, upon renewal of plaintiffs' motion for class certification, certified a class, defined the class as, in pertinent part, "[a]ll persons and entities who signed as lessees and/or guarantors . . . between January 1, 1999 and January 22, 2004 . . . and who made monthly loss and damage waiver . . . payments . . . to defendant Northern Leasing Systems, Inc.," and excluded from the class (1) lessees whose leases had been assigned to Northern Leasing; (2) lessees who entered into leases after January 22, 2004; and (3) lessees who signed agreements in which the term "LDW" or "Loss & Damage Waiver" was expressly written above the merger clause on the signature page of the agreement, and ordered that Northern Leasing bear the cost of notifying the class, unanimously modified, on the law, to the extent of expanding the class to include (1) lessees/guarantors whose leases were assigned to Northern Leasing; (2) lessees/guarantors who executed leases with Northern Leasing, irrespective of whether they made loss damage waiver payments; and (3) lessees/guarantors who executed leases with

Northern Leasing from January 1, 1999 through the date of this action's resolution, and otherwise affirmed, without costs. Appeal from order, same court and Justice, entered on or about April 24, 2009, unanimously dismissed, without costs, as subsumed in the appeal from the June 30, 2009 order.

Plaintiffs are small business owners who leased credit card point of sale (POS) equipment from Northern Leasing, which is in the business of leasing such equipment. The POS equipment was purportedly leased pursuant to a four page lease. Plaintiffs contend that the first page of the lease represents the entire agreement and that this page failed to disclose, inter alia, that plaintiffs were subject to a loss damage waiver (LDW) fee. Plaintiffs contend that Northern Leasing breached the equipment lease by charging and collecting LDW payments that were not disclosed on the first page of the lease. Plaintiff's claims sound in breach of contract and fraud.

The motion court granted plaintiffs' application for class certification with respect to the breach of contract claim, finding that plaintiffs had satisfied the requisites of CPLR 901 and 902. The motion court also granted plaintiffs' application seeking that Northern Leasing bear the cost associated with providing court approved notices to all members of the class.

Plaintiffs appeal the portion of the motion court's order that limited the class definition to any lessees who entered into leases with Northern Leasing prior to commencement of this action and to any lessees who made LDW payments. Plaintiffs also appeal the motion court's failure to include in the class definition any lessees whose leases were assigned to Northern Leasing. Lastly, plaintiffs appeal the motion court's exclusion from the class definition of those lessees whose leases made reference to LDW on the first page. Northern Leasing appeals the motion court's decision to certify the class, alleging error in the court's conclusion that common issues predominate over those pertaining to individual class members and that the named plaintiffs are typical of the class, as well as its decision that Northen Leasing should bear the expense of providing court approved notices to all class members.

CPLR 902 states that a class action can only be maintained if the prerequisites promulgated by CPLR 901 (a) are met (*Weinberg v Hertz Corp.*, 116 AD2d 1, 4 [1986], *affd* 69 NY2d 979 [1987]). Those prerequisites are (1) that the class is so numerous that joinder of all members is impracticable (numerosity); (2) questions of law or fact common to the class predominate over questions of law or fact affecting individual class members (commonality); (3) the claims or defenses of the class repre-

sentatives are typical of those in the class (typicality); (4) the class representatives will fairly and adequately protect the interests of the class; and (5) a class action represents the superior method of adjudicating the controversy (superiority) (*id.*; CPLR 901 [a]). If the prerequisites set out in CPLR 901 (a) are met, the court, in deciding whether to grant class action certification should then consider the additional factors promulgated by CPLR 902 such as the interest of individual class members in maintaining separate actions and the feasability thereof; the existence of pending litigation regarding the same controversy; the desirability of the proposed class forum; and the difficulties likely to be encountered in managing the class action (CPLR 902; *Ackerman v Price Waterhouse*, 252 AD2d 179, 191 [1998]).

Whether the facts presented on a motion for class certification satisfy the statutory criteria is within the sound discretion of the trial court (*Small v Lorillard Tobacco Co.*, 94 NY2d 43, 52 [1999]; *CLC/CFI Liquidating Trust v Bloomingdale's, Inc.*, 50 AD3d 446, 447 [2008]; *Wilder v May Dept. Stores Co.*, 23 AD3d 646, 649 [2005]; *Klein v Robert's Am. Gourmet Food, Inc.*, 28 AD3d 63, 70 [2006]; *Ackerman* at 191; *Lauer v New York Tel. Co.*, 231 AD2d 126, 130 [1997]). However, this Court is also vested with the same discretion and may exercise it even if there has been no abuse by the trial court (*Small* at 52-53; *CLC/CFI Liquidating Trust* at 447; *Klein* at 70). The proponent of class certification bears the burden of establishing the criteria promulgated by CPLR 901 (a) (*CLC/CFI Liquidating Trust* at 447; *Ackerman* at 191), and must do so by the tender of evidence in admissible form (*Feder v Staten Is. Hosp.*, 304 AD2d 470, 471 [2003]). Conclusory assertions are insufficient to satisfy the statutory criteria (*id.*; *Chimenti v American Express Co.*, 97 AD2d 351, 352 [1983]).

In determining whether an action should proceed as a class action, it is appropriate to consider whether the claims have merit (*Bloom v Cunard Line*, 76 AD2d 237, 240 [1980]). However this "inquiry is limited" (*id.*) and such threshold determination is not intended to be a substitute for summary judgment or trial (*Kudinov v Kel-Tech Constr. Inc.*, 65 AD3d 481, 482 [2009]). Class action certification is thus appropriate if on the surface there appears to be a cause of action which is not a sham (*Brandon v Chefetz*, 106 AD2d 162, 168 [1985]).

CPLR 901 (a) (2) requires that questions of law or fact common to the class predominate over any such questions affecting individual class members. Thus, when individualized proof is required for the claims alleged or individual factual questions

with respect to individual class members preponderate, commonality is lacking (*CLC/CFI Liquidating Trust* at 447; *DeFilippo v Mutual Life Ins. Co. of N.Y.*, 13 AD3d 178, 180-181 [2004], *lv dismissed* 5 NY3d 746 [2005]; *Banks v Carroll & Graf Publs.*, 267 AD2d 68, 69 [1999]). However, the rule requires predominance not identity or unanimity among class members (*Friar v Vanguard·Holding Corp.*, 78 AD2d 83, 98 [1980]). Thus, commonality is not merely an inquiry into whether common issues outnumber individual issues but rather "whether the use of a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated" (*id.* at 97 [internal quotation marks and citations omitted]). Class certification is appropriate even when there are questions of law or fact not common to the class (*id.*; *Weinberg* at 6; *Kudinov* at 482; *Freeman v Great Lakes Energy Partners, L.L.C.*, 12 AD3d 1170, 1171 [2004]).

CPLR 901 (a) (3) requires that the claims asserted by the plaintiff(s) seeking to represent the class, as well as any defenses to those claims, be typical of the claims made by and the defenses asserted against the class members. If it is shown that a plaintiff's claims derive "from the same practice or course of conduct that gave rise to the remaining claims of other class members and is based upon the same legal theory . . . [the typicality] requirement is satisfied" (*Friar* at 99; *see also Ackerman* at 201; *Freeman* at 1171). Typicality does not require identity of issues and the typicality requirement is met even if the claims asserted by class members differ from those asserted by other class members (*Pruitt v Rockefeller Ctr. Props.*, 167 AD2d 14, 22 [1991]; *Super Glue Corp. v Avis Rent A Car Sys.*, 132 AD2d 604, 607 [1987]).

Northern Leasing claims that individual issues among the class members will predominate over common issues. Primarily, Northern Leasing claims that plaintiffs can only prevail on their breach of contract claim if they establish a valid excuse for failing to read the lease or to perceive that it consisted of four pages rather than just one. Northern Leasing contends that this excuse will be unique to each class member, thereby requiring a legion of individualized inquiries. Northern Leasing's contention is without merit.

Absent a valid excuse for failing to read a document, a party who signs the document is bound to its terms (*Arnav Indus., Inc. Retirement Trust v Brown, Raysman, Millstein, Felder & Steiner*, 96 NY2d 300, 304 [2001]; *Martin v Citibank, N.A.*, 64 AD3d 477, 477 [2009]; *Sorenson v Bridge Capital Corp.*, 52 AD3d 265, 266 [2008], *lv dismissed* 12 NY3d 748 [2009]). Thus,

if the breach of contract claim hinges on individual excuses for failing to read the contract or on oral representations to each putative class member at the time of the lease's execution (*Mc-Cracken v Best Buy Stores, L.P.,* 248 FRD 162, 167 [SD NY 2008]), class certification would be inappropriate (*id.*). However, in this case, liability could turn on a single issue. Central to the breach of contract claim is whether it is possible to construe the first page of the lease as a complete contract because of the merger clause, signature lines, and the space for the detailing of fees. Resolution of this issue does not require individualized proof, and is capable of being determined solely upon examination of the first page of the lease. Moreover, insofar as a merger clause requires the full application of the parol evidence rule, thereby barring extrinsic evidence to vary the terms of a writing (*Matter of Primex Intl. Corp. v Wal-Mart Stores,* 89 NY2d 594, 599 [1997]), the trial court could conclude that any extrinsic evidence, such as the circumstances regarding each lease's execution, including any oral representations, are barred, thereby precluding individualized proof. We have considered Northern Leasing's other arguments on the issue of commonality and find them unavailing.

Northern Leasing's assertion that want of typicality prevents class certification is also meritless. It is clear that the breach of contract claim asserted by the plaintiffs arises from the same course of conduct giving rise to the claims by other putative class members, namely, the execution of the leases, and that plaintiffs' claims and those of the putative class members are based upon the same legal theory, namely, that only the first page of the lease is enforceable (*Friar* at 99; *see also Ackerman* at 201; *Freeman* at 1171). Identity of issues is not required (*Pruitt* at 22; *Super Glue Corp.* at 607) and that the underlying facts of each individual plaintiff's claim vary, or that Northern Leasing's defenses vary, does not preclude class certification.

Northern Leasing also contends that the breach of contract claim is duplicative of and dependent on the fraud claim and thus not individually certifiable. However, this Court has already held that plaintiff's breach of contract claim is viable despite the existence of the fraud claim (40 AD3d 366, 368 [2007], *affd* 10 NY3d 486 [2008]). Moreover, the pleadings and evidence demonstrate that the breach of contract claim is independent of the fraud claim since the sole issue on the breach of contract claim, is the interpretation of the lease.

CPLR 904 (d) authorizes the court to shift the cost of providing notice to class members when the interests of justice so mandate. In determining whether to shift the cost, the court

considers the merits of the action, the defenses thereto, and the resources of the respective parties (*Fiala v Metropolitan Life Ins. Co.*, 17 Misc 3d 1102[A], 2007 NY Slip Op 51797[U] [2007], *mod* 52 AD3d 251 [2008]; *Makastchian v Oxford Health Plans, Inc.*, NYLJ, Aug. 3, 1998, at 28, col 1 [defendants would bear the expense of notifying class members insofar as they were a large corporation, voluntarily engaged in mass mailings, and plaintiffs were of modest means]). Inasmuch as plaintiffs' action is potentially meritorious, plaintiffs are small business owners, and Northern Leasing is a large corporation with hundreds of thousands of clients, it was not an abuse of discretion to have it bear the expense of notification. Moreover, mass notification and mailings present no substantial burden to Northern Leasing since it stands ready, willing, and able to provide leases, upon request, to each and every one of its clients.

Plaintiffs seek class certification for the time period beginning from January 1, 1999 through the conclusion of this litigation, asserting that Northern Leasing's alleged conduct continues to date. Accordingly, the class membership should not be limited to leases executed prior to the commencement of this action. Instead, the class period should include any claims arising from the execution of leases from January 1, 1999 through the date of the resolution of this action (*Langley v Coughlin*, 715 F Supp 522, 554 [1989], *appeal dismissed* 888 F2d 252 [1989] [since pleadings put defendants on notice that the claims alleged were continuing and would continue, the class definition should include claims arising after the commencement of the action]).

The instant class definition should include those plaintiffs, who made no LDW payments, but by virtue of the leases are nevertheless obligated to pay such fees because all LDW fees are alleged to be unauthorized (*cf. Batas v Prudential Ins. Co. of Am.*, 37 AD3d 320, 321 [2007] [class definition overbroad when it included members with no cause of action]; *Klein* at 71 [class definition should not be so overbroad so as to include members not harmed by defendant's wrongful conduct]). Concur—Mazzarelli, J.P., Sweeny, Moskowitz, Manzanet-Daniels and Román, JJ.

Motion to strike joint record on appeal and cross motion seeking reimbursement of printing costs, costs on the motion, and sanctions denied. **[Prior Case History: 24 Misc 3d 1206(A), 2009 NY Slip Op 51290(U).]**